HALL, Judge.
This suit arises out of a contract involving the sale of a herd of Charoláis cattle. Plaintiffs, Robert E. and Gloria Bradford, sued defendants, David M. Lide, Jr., Melvin E. Ward and Springfield Farms, a partnership, for specific performance and damages. Lide and Springfield Farms answered and reconvened for enforcement of the contract and damages. Ward did not answer. After trial, judgment favorable to plaintiffs was rendered and defendants Lide and Springfield Farms appealed.
During the latter part of 1971, Lide, a breeder of and dealer in Charoláis cattle from Dallas, and Bradford, a cattle raiser-in West Carroll Parish, negotiated for the sale by Lide to Bradford of a herd of Charoláis cattle. In early December, the cattle were delivered to Bradford. A contract entitled “Credit Bill of Sale For Cattle With Chattel Mortgage Retained” was prepared and signed by some of the parties. Mrs. Bradford was not satisfied and would not sign the contract, her signature being necessary in order to complete the financing which was to be handled by a local bank. After further negotiations, a document entitled “Collateral Agreement was signed on January 10, 1972, on behalf of Lide by his agent, Mrs. Bradford signed the original contract, the loan from the bank was completed, and the cash portion of the sales price was paid
The credit bill of sale instrument provides for the sale by Lide to Bradford of a herd of Charoláis cattle, consisting of 40 female units, plus an undivided 14 interest in a bull, the specific cattle being identified on a list attached to the instrument. The sale was made for a consideration of $57,600, payable $28,800 cash and $28,800 in a' note due in two installments on June 15, 1973 and June 15, 1974. The instrument stipulates a vendor’s lien and mortgage on the cattle described. The vendor warrants that each Charoláis female either has a calf at side or has shown a positive reaction to a pregnancy test, or will be a breeder at the earliest age appropriate under recognized veterinary standards. Vendor agrees to purchase and vendee agrees to sell all progeny of the heifers for a period of 2 years under certain terms and conditions.
The “collateral agreement” provides that in the event Bradford should so elect within 90 days from the date of the original agreement (December 10, 1971) to withdraw from the Charoláis breeding business, he shall have the option of tendering back to Lide the 40 head of breeding stock, plus any increase thereto. In the event of such tender, Lide will refund to Bradford any and all cash payments and assume any indebtedness owed by Bradford to the extent of the purchase price, but not to include maintenance and other expenses. Lide shall have 30 days from the expiration of the 90 day period to take delivery of the cattle and increase, and to make arrangements for the release of Bradford from the indebtedness. Lide further agrees to place in escrow as security for his agreement a $28,800 note owned by him.
On March 6 and 10, 1972, within the 90 day period, Bradford gave notice to Lide *224 by letter that he was exercising- his option of returning the cattle in accordance with the contract. Thereafter, through conversations and correspondence, Lide advised Bradford the cattle were not in merchantable condition, called on Bradford to get the cattle in better condition, and asked Bradford for an accounting of cattle losses which had occurred since the cattle were delivered. Lide made some effort to sell the herd but was unsuccessful in doing so. Bradford continued to call on Lide to take delivery of the cattle, refund his money paid, and discharge the indebtedness, contending the cattle were in satisfactory condition and advising that credit would be given for any cattle losses.
The 30 day period for performance by Lide expired on April 9, 1972, without consummation of the transaction. This suit followed.
The district court rendered judgment in favor of plaintiffs and against defendants (1) decreeing specific performance of the collateral agreement and specifically ordering defendants to accept and take delivery of the remaining cattle and increase, and to pay plaintiffs $25,050, the cash portion of the sales price paid by plaintiffs to defendants; (2) ordering the escrow agent to deliver the note assigned as security, plus a payment made thereon, to defendants, or upon default oí payment of the judgment, to deliver same to plaintiffs; (3) ordering cancellation of the note representing the credit portion of the sales price; (4) ordering defendants to pay plaintiffs $5,826.43 representing maintenance expenditures and pasture rent for 2 years; and (5) rejecting defendants’ re-conventional demand.
On appeal, defendants specify numerous errors in the conclusions of the trial judge on which the judgment is based. The principle contentions made by defendants are that they are not obligated to accept return of the cattle and refund the purchase price under the “collateral agreement” because (1) the cattle were not in merchantable condition at the time Bradford elected to withdraw, and (2) the agreement required Bradford to tender the same 40 head of cattle purchased by him which he did not and could not do as several of the cattle were lost prior to exercise of the option by Bradford.
On the issue of merchantability, the trial court held the collateral agreement contained no requirement that the cattle be in merchantable condition as a prerequisite to performance by Lide upon election by Bradford to withdraw. The trial court went on to hold, however, that even if such requirement is implied in the agreement, the cattle were, in fact, in merchantable condition when Bradford gave notice of his election to return the cattle.
We partially disagree with the conclusion of the trial court. Although the agreement does not expressly mention merchantability or condition of the cattle, it is necessarily implied that the cattle be fit for the purpose intended, that is as breeding stock, both in connection with the original sale from Lide to Bradford and with the return or sale back from Bradford to Lide. The warranty of fitness implied in all sales was not modified or renounced. Certainly, Bradford could not allow the condition of the cattle to deteriorate during the 90 day period and then call on Lide to take them back and return the purchase price. See LSA-C.C. Arts. 1764(2), 2520, 2541 and 2542.
We find no error, however, in the district court’s conclusion that the cattle were actually in sound, merchantable condition. The written reasons for judgment accurately summarize and analyze the conflicting evidence relating to the condition of the cattle and need not be repeated here. Plaintiffs’ evidence, consisting of the testimony of persons familiar with the cattle, including veterinarians, is convincing that the cattle were in reasonably good condition in March and April, 1972, the opera *225 tive period of the collateral agreement provisions.
The district court correctly concluded that a reasonable interpretation of the contract provisions would not require Bradford to tender the entire, exact 40 head of cattle originally delivered to him in order to effectively activate the provisions of the collateral agreement. It would he unreasonable to conclude the parties intended these provisions to be inoperative in the event of loss by death or accident of one or two animals during the 90 day period, an event likely to occur in the normal course of cattle raising. A reasonable interpretation of the provisions of the agreement is that the remaining cattle in the herd, assuming it was not substantially diminished, be returned to Lide, with Lide to receive credit for any lost cattle against the return of the purchase price due by him.
The evidence shows that although 40 cows and 12 calves were delivered to Bradford, two cows were not accepted and were immediately returned because of defects. Thus, only 38 were actually delivered pursuant to the agreement. One cow died prior to exercise of the option to withdraw by Bradford and one cow died after exercise of the option but before expiration of the 30 days in which Lide was to take delivery. There is no dispute that Bradford should bear the loss of these two cows. The trial judge so concluded, but did not allow Lide a credit for the value of the two cows because of insufficient evidence of value. Lide testified the price of the heifers was approximately $1,250 each. The total sales price supports a value of at least this amount. No contrary evidence was offered. We conclude Lide is entitled to a credit of $2,500 against the return of the cash portion of the purchase price and the judgment will be amended accordingly.
There is evidence three of the twelve calves delivered with the 40 cows died prior to expiration of the 120 day period. However, there is no evidence whatsoever as to the value of the calves and, consequently, no basis on which to calculate a credit for their value.
Several cows died after April 9, 1972, and prior to trial in December, 1973. The district court held that after the date on which Lide should have taken delivery and returned the purchase price, less credits, Bradford would be liable only for loss sustained through gross neglect on his part, citing LSA-C.C. Art. 2469 which provides :
“The seller is released from this degree of care, when the buyer delays obtaining the possession; but he is still liable for any injury which the thing sold may sustain, through gross neglect on his part.”
The death of each grown cow was explained by Bradford and none of the losses were due to negligence—certainly not to “gross neglect”.
The trial court granted plaintiffs damages for expenses incurred in maintaining the cattle after April 9, 1972, in the amount of $4,926.43 and for loss of use of the pasture in the amount of $900. The evidence supports this award.
For the reasons assigned, the judgment in favor of plaintiffs against defendants is reduced from the sum of $24,050 to $21,550. As amended, the judgment is affirmed, at appellants’ cost.
Amended, and as amended, affirmed.